Okay, I'd like for the attorneys to step up to the podium. I would like for you to state your name, tell me who you represent, and approximately how long your argument will take. Let the appellate go first. Good morning, Counselor. Good morning, Your Honor. Zohan Baloch on behalf of the Plaintiff Appellate, and I will need approximately 15 minutes. I'd like to reserve 5 minutes for rebuttal. That's very good. Pronounce your last name again. Baloch. Baloch. All right, Mr. Baloch. Good morning, Counselor. Good morning. Jay Berlin, B-E-R-L-I-N, for Castleview Construction, Defendant Appellate. No more than 10 minutes, Your Honor. Very good. Mr. Baloch, you may proceed with your argument. After Mr. Berlin has his seat. Thank you, Your Honor. May it please the Court. This case concerns primarily, or rather purely, a legal question involving the proper interpretation of a contract, a real estate listing contract, between a broker and a seller. The plaintiff is a licensed real estate broker, and the contract at issue gave him an exclusive right to sell the dependency property. You said the plaintiff is a... He's a real estate broker. He's not licensed. He is licensed. He is a licensed real estate broker. No, McDonald, you're talking about. Mr. McDonald, yes. Yeah, but on the contract, it says that the exclusive designated agent is Mr. Kochman. Correct. And, you know, the word exclusive can be used in many different contexts, depending on what we're talking about. And when we're talking about designated agency, Mr. Kochman was the only designated agent in the contract. But when we're talking about the right to be a broker for contractual purposes, this was an exclusive right given to Mr. McDonald. Illinois law recognizes three different kinds of brokerage contracts, open listing agreements, but exclusive listing agreements are specifically one of those. Mr. Kochman wasn't licensed, correct? He was not. Okay. Yes. And the circuit court, you know, interpreted the provision that named him the designated agent in this contract and took that fact that he wasn't licensed and came to the conclusion that because the designated agent could not perform under the contract legally, therefore the plaintiff necessarily could not perform either. And that's why the case was dismissed with prejudice. Well, let's go back to the language, because you're correct that we should look at the contract. Paragraph six of the contract designated agent states that broker seller and thereby agree that Mr. Tuckman is sponsored licensee, a broker where he wasn't a licensee. He didn't have a license. Correct. So so so that that's not true. So he was never licensed. True. I think in this sense, I would say that in this context, the word licensee means even someone whose license is suspended. It's still the person. It's not if you're suspended, you're not a licensee. I mean, there would be nobody. Everybody who we call to somebody who was suspended had a licensee. Then everybody's a licensee as long as at one time or another they had a license. I also point them to Section 20-9 69 of the Real Estate Licensing Act, which allows the rehabilitation of a license. We don't look at this contract at the time it was entered into. And at the time. OK, so it doesn't matter. We know factually he didn't obtain a license. But we only look at it at the time it was entered into. So at that time, we all know there's no question about it, that he didn't have a license. Why is that not the end of the story? Well, the question then becomes what is the effect of that? The failure to designate a license, a designated agent under this contract. Don't we look at the statute then? The purpose of the statute? Well, yes, Your Honor. The purpose of the statute, the purpose of a designated agency in general, the reason why you would designate an agent is for a very specific purpose. It does not, and this is one of the points I was going to bring up, is the designated agency is not a concept by which a broker transfers all of his brokerage responsibilities to a single person. It's a very complex, statutorily created scheme that allows a broker to continue representing both sides of the transaction through the employment of the designated agency concept. It does not take away the broker's ultimate responsibility to be the person who acts on this contract. And if you look at the language of the contract, it's very clear that the broker is the party to the contract. He's the one who signed it. He's the one that throughout the entire contract is the one who has obligations to the seller. So if the failure to designate somebody, if, as you're suggesting, Your Honor, that the designated agent's Selection 6 is basically null in some way, then that simply prevents the broker from performing those services. But if those services never become due, it does not then invalidate the entire contract. And that's what you're saying we should read out paragraph 6. If you accept your... No, I'm not accepting anything. I'm just saying we know as a fact that he didn't have a license. And it says he's a licensee. And in fact, it goes on in the next paragraph to say minimum services, pursuant to the very act we're talking about, that the broker would act through designated agent. And the designated agent would do these minimum services. So we'd have to read out both paragraphs 6 and 7 and maybe others. But those two seem to me to be central to this whole agreement. Well, I don't think we necessarily have to read out that language. I think we simply have to then look at the plaintiff's ability to perform the contract in light of his inability to perform those services. If those services never become due... Well, I don't understand. Because the statute's purpose is to make sure that agents that are working with property owners and sellers and buyers are licensed. And here we have someone who was designated who was not licensed. So if we are to ignore that, aren't we ignoring the purpose of the statute? Only if the performance of this contract would necessarily contemplate the performance of unlicensed services. It is true that if such services became due, if an offer had come in during this period, which the record does not indicate at all, at that point the broker's obligation as per the contract would be to submit that offer through a designated agent to the seller. But until that comes, there's no obligation. That would be analogous to if I were to enter into a contract to shovel your driveway next winter, but I don't own the shovel today. Just because I don't own the shovel today doesn't mean that the contract is somehow void. The expectation is that it's an executory contract for future performance, and once performance becomes due, I will be able to perform it. And because Section 20-69 allows for rehabilitation of the person whose name is on this license, he could become a licensee. But he didn't. I mean, we can't, again, courts usually don't deal much in coulds. It's what happened. And again, we look at the time entering an agreement, so coulds don't really enter into this. But what you're saying makes no sense in light of paragraph 7, because those minimum services are to be performed through the designated agent who can perform them. So he can't even do that. You know, I would submit that if, hypothetically, if the following day after this contract was signed, the broker went through the process of rehabilitating the designated agent's license, a month later an offer came in and it, that's not our case. I mean, the hypothetical, the fact that, again, you're going after the agreement was signed, it doesn't matter what happened. There is no offer. We have to take the facts to the record. Those hypotheticals, we can all come up with hypotheticals. But in this situation, we have certain facts. Well, what John was alluding to is the concept of impossibility of performance. And that is measured, I believe in one of the cases I cited, is measured at the time of the contract signing. And it has to be objectively impossible. And the hypothetical I posed was simply a way to show how it's not objectively impossible, because a license could be rehabilitated or those services could never become due, in which case there is no impossibility of performance. You have laid arguments with regard to the fraud, the quantum error. I just wanted to confirm. The only claim we're concerned about here is the breach of contract. Yes, Your Honor. Okay. Thank you. And when we look at the contract language, one of the first things that comes out, as you and I discussed, was the distinction between the broker services and the broker services that need to be done through a designated agency. There's a distinction between the two. In the contractual language, setting back for a second, Illinois case law is clear that contracts must be interpreted as a whole, giving meaning to the entire contract and all provisions, and not read in a way that would make certain provisions meaningless. If we were to conflate the broker's obligations with the designated agent's obligations entirely, that would render meaningless this specifically added language in Section 7, which states that the minimum services must be provided through the designated agent. Nowhere else in the contract does it condition the broker's performance through the designated agent. So why would it be put in this specific section if it was not meant to be limited just to those services? And this makes sense in the context of brokerage. The act of brokering property, or brokering anything for that matter, does not inherently involve any sort of agency or representation. Bringing parties together is the essence, marketing the property to get prospective buyers. The first section of the contract states what the purpose, what the consideration of the contract is. It is for brokers' efforts to procure a ready, willing, and able buyer. This is ultimately a marketing contract. What you just said, I'd like to bring your attention to Paragraph 10. Due representation, which was initialed. And it says seller acknowledges and agrees that the designated agent, doesn't even mean a broker, licensee, calls him a licensee right there and then. And he's not. I may undertake, it doesn't say broker and designated agent. In some places here, like Paragraph 8, referral inquiries are broker and a designated agent. But in Paragraph 10, it only talks about the designated agent calling him or her a licensee. Well, that's correct. The fact that a licensed broker takes a representation, this is when you represent both sides. Sure. Should we read that one out too? No. In fact, I think that actually proves our point further because the fact that it only applies to the licensee and not, I'm sorry, to the agent who's defined as licensee in this contract. According to the statute, the broker is also a licensee. But the fact that they did not need to address dual representation with regards to the broker is why it comes from designated agency. The only time that a real conflict of interest, a real agency conflict, which is what designated agency was meant to address, would come up, by definition, in Section 15-50 of the statute, is when the designated agent represents both sides. But the statute already contemplates that when a broker represents both sides, that's fine. And it's not a dual agency, so long as there are two separate designated agents. So the fact that the broker is not in this is simply in line with the framework of the designated agency statute that was created. I would ask the court to consider, or go back also to what I was saying before about the distinction between, define what it means to be a broker service. So part of the confusion, part of the issue that brought us here today was the conflation of all the broker services as agency services. The marketing of the property, as well as the actual representation. As I was saying before, the act of bringing parties together does not inherently involve any sort of representation. But in the context of real estate, the legislature has determined that real estate agents put themselves out there as professionals, and it's expected that clients would rely upon advice of their brokers, which is why an agency element was inserted. But they really are two separate things. And until an offer is provided, until there's actually a transaction in which a broker then now takes on this role of representation, or giving advice, advising whether this is a good offer, whether they should encounter the offer, how they should go about dealing with an actual prospective transaction, and once the contract is even signed, how to manage that transaction. How would you explain, then, the language in Paragraph 6, that Mr. Cotman was seller's exclusive designated agent under disagreement with broker, and neither broker nor other sponsored licensee of broker would be acting as agent for seller? I would interpret that to apply only to those minimum services which inherently are agency-related activities. Marketing the property is not an agency-related activity. It would make no sense for somebody to sign a contract with a brokerage with an army of brokers out there to procure buyers through their many, many connections, only to say, no, no, no, I only want this one person to find me a buyer. Well, but that's what you're predicting in the next sentence, which says, seller understands and agrees that broker and any of broker's other sponsored licensee may enter into agreements with respective buyers of the property as agents for those buyers. So they can be of both sides. Again, that talks about buyers, but only buyers. When it comes to sellers, we have an exclusive designated agent, and that agent would be acting exclusively for the seller. With regard to what I would consider agency-related activities, presentment of offers, advising on whether offers are acceptable. So you're selling what you're talking about. Exactly, minimum services. This contract says that Mr. Kottroom was the only agent that could be acting for this broker, right? Yes, Your Honor. Okay. So, I mean, if the broker isn't careful enough to figure out that its agents are licensed or not licensed, what are we supposed to do about it? Well, again, that's a hypothetical that really isn't before the court. I agree that if an offer had come in and the broker had tried to submit that to an unlicensed agent. These licenses are online. Somebody walks into your office and says, oh, I want to work for this real estate company, the broker can check it. They can ask to see a copy of the license. They can verify it with the licensing agency. So the public policy is not to have people willy-nilly running around trying to sell property or represent brokers or represent sellers or represent buyers. The public policy is to make sure that these people are trained properly, understand the business, understand the math of it, understand the mortgages, the financing of it, and have a license. Well, Your Honor, I would point out that this person did have a license that had become suspended. So he had been a longstanding broker. It was because of a nonpayment of child support, I believe, was the reason. He didn't have a license. He had a license at one time. He wasn't qualified as a real estate professional, I would point out. Well, he wasn't a licensed real estate professional. And one would have the expectation that if he's going to be signing contracts, that he's a licensed real estate professional. I would agree with that, Your Honor. And he did not sign this contract. And at no point in the record have we alleged that he performed any brokerage activities for the nation. As far as whether the broker who was licensed is allowed to perform this contract without this. And Tam had an obligation to know that. I mean, if you walk into a beauty shop and get your nails done, you expect those people to be trained to do nails. If you go to a barber shop, you expect those barbers to be trained and licensed to be barbers. Why? Because there's a public policy that says people who do these 168 licensed jobs have to have the right kind of training and license. And this guy didn't. And that policy is incorporated into the statute, which prohibits actions for compensation that are based on unlicensed activities. And at no point have we alleged. And we don't even know. But this contract isn't just for Tam or Mr. McDonald to get the money if this property is sold. This contract is for Mr. Kochman to handle all of that for them. I don't necessarily agree with that, Your Honor. Well, it says exclusive agent. But the contract is not between the exclusive agent and the seller. In fact, the statute is very clear that designated agents, sponsored agents, cannot deal directly, in terms of money at least, with clients. Only brokers can. Well, but Tam is acting through its one and only one exclusive agent. Which I contend is only with respect to certain activities that never became due. With regard to marketing the property. But he wasn't eligible to perform those activities. But could have been in the future if it came due. Again, we do concede that if there had been an offer, if the defendant had not breached or repudiated this contract before performance came due, this would be an entirely different case. And I do acknowledge that this case does rest on the very narrow or unique facts that a defendant breached, essentially repudiated this contract before the defendant had an opportunity to perform. But were they saying this contract, Tam and Mr. McDonald had an opportunity to say to some other agent of theirs, and they're stable, you handle this while Cotchman gets his license renewed. They didn't do that. I believe that actually is implied in the contract, but that's not before the court on this issue. Well, there's no other agent listed on this contract. Correct. And Tam is not listed as its own agent in this contract. And McDonald is not listed as an agent in this contract. The unlicensed person is listed as the agent in this contract. But the unlicensed person was not responsible for any marketing activities or anything that would be due that was due from the broker up to the point of breach. The only policy, as this court recognized in AMA Realty Group versus Kaplan Realty, is it is the law to protect a broker who has been employed and authorized to act, who in good faith so acted. The broker was employed here. Tam was the broker. He was the one, and, again, we look at the contract language. Broker has his broker's efforts to procure a ready, willing, and able buyer. It is broker shall have the firm's obligation to market, advertise, or sell. None of this relates to the designated agency's duties. And so long until the breach happened, Tam was doing everything that it was obligated to do up to that point. There was no breach that would justify lack of performance on the other side. Except to provide a licensed agent. When that licensed agent's services became necessary. And had the seller not breached, maybe that would have happened, but we don't know. And it should not be for Mr. McDonald's to prove what happened. Okay. But in your litany of things, the one thing that's missing is a licensed agent. Whose job is solely to perform minimum services, which never became due. But also, Part B of Paragraph 6 unequivocally states, neither broker nor other sponsored licensees or broker will be acting as agent for selling. That means no one else, including the broker. So, again, you want us to forget that and just say, well, the broker itself can do all of this. So, therefore, the fact that Mr. Tackman wasn't licensed is of no merit. Section 15-50 of the real estate statute defines designated agency. And the first sentence states that, or rather, the definition of designated agency is set forth in Section 1-10. And the first sentence states that it is a contractual relationship between a sponsoring broker and a client. The bulk of what was required from Mr. McDonald under this contract were marketing activities pursuant to this contract. The designation of an agent and these agency duties for which Mr. Cochran was exclusively the designated agent are separate. And if they never became due, then there cannot be failure of performance of them. And that's what we're talking about here. The claim was dismissed because the circuit court believed Mr. McDonald could not allow performance. But failure to perform before performance is due is not a breach. Up until the breach, everything that was required was done, and it was done by a licensed person. Who's that? Mr. McDonald himself. Why don't you bring your argument to a conclusion, Mr. Block? Thank you, Your Honor. Well, in conclusion, again, as this Court has recognized before, it is the policy of the law to protect the rights of a broker who have acted in good faith. And that's exactly what Mr. McDonald had done here, at least as far as the record is concerned and what we have before us now. He performed everything that was required of him up to the point of breach. There is nothing in the record that indicates that any activity requiring the services of a designated agent ever became due. Mr. McDonald's exclusive right was ripped away from him, and the circuit court denied him a remedy. And we ask this Court to reverse the circuit court's dismissal with prejudice of the contract claim and remain for further proceedings. Thank you. Thank you, Your Honor. Mr. Berlin. Good morning again, Counsel. Good morning. Thank you. May it please the Court. I want to highlight a couple of things initially. Procedurally, Judge Taylor dismissed the breach of contract count initially based on the issue of non-licensure. All the arguments that have been raised in the motion for reconsideration are all new arguments that were never raised in that part of the record. The fact that now counsel is raising, for example, that the performance of the designated agent didn't arise was waived by not being brought earlier. Or forfeited. Forfeited. But a couple of points about at least the purpose of the designated agent. And if you look at the law review article written by the law student that's included in the appendix, the purpose of that designated agent provision is to protect the brokerage company so that if you have 100 agents working for you and you've got one person designated to represent the seller of the property, it doesn't prohibit the other 99 people from bringing in the buyer. So the legislature says we're going to protect the brokerage company by saying, brokerage company, we realize that you're the contracting party because we want you to hold the money, but we want you to designate the specific licensee in your office who's going to represent the seller and be the seller's sole and exclusive agent to the exclusion of all others. And that's codified in the definition in section 454.1-10. A designated agent is defined as a sponsored licensee named by the sponsoring broker as the legal agent of a client. A licensee then is defined as any person who holds a valid unexpired license. And the exclusive brokerage agreement defines a written brokerage agreement that provides that the sponsoring broker has the sole right through one or more sponsored licensees to act as the exclusive designated agent or representative of the client. So under those definitions, TAM will be sponsoring broker. TAM appointed Mr. Koopman to be the broker on behalf of my client. If you look further at section 1515, under duties of licensees representing clients, it specifically states that a licensee representing a client shall, number one on the list, is perform the terms of the brokerage agreement between a broker and the client. So contrary to the position that there was no performance due, once that agreement was signed and once Mr. Koopman was designated as the agent exclusively for Castleview to sell the units, his performance began. And he was obligated to begin to market the property. The statute doesn't... Counsel's argument was that Mr. McDonald could perform everything, and so there's no breach. And he was licensed. He may have been, but he wasn't our designated agent. According to paragraph six of the contract... But he was a broker. I mean, he understood. I don't think he's arguing that he's a designated agent. What he's arguing is that as the broker, as a broker, he could perform under the contract, independently of Mr. Koopman. He could have, but he wasn't our designated... Pursuant to the contract that they drafted and provided to us, the Koopman, a sponsored licensee or broker, is seller's exclusive designated agent under this agreement with broker, and neither broker nor other sponsored licensees or broker will be acting as agent for the seller. So does that mean that if McDonald went out and got... He could get a buyer under the agreement because it says exclusive designated agent is Koopman. But he couldn't do any services on behalf of the seller. Correct. And that's because of the statute or because of the contract? Both. The contract basically mirrors the statutory language to protect my client and to protect the broker. So it's clear that there is one designated person who is specifically representing Castleview in the sale of the property. Now, that doesn't mean that you don't have some... Let's say there's an assistant who puts a for sale sign up or an open house sign. But the fundamental characteristics of performing the terms of the brokerage, selling my client's properties, were to be performed by Mr. Koopman, and he wasn't licensed. He didn't have the authority to do it. When did you learn that he wasn't licensed in the record? In May of 2014. Almost nine months into the record. When was... Well, the reality was he wasn't responding to phone calls. He wasn't participating. He wasn't marketing our property. So the client called and finally found out that he wasn't licensed. So wanted to sell our property. We had a contractual relationship. The spring was approaching. And as everybody knows, spring is the big real estate market in the city of Chicago. And if you miss the spring market, you've lost your sort of Super Bowl window of opportunity to sell. So my client didn't have a choice. We wanted to market these properties. We couldn't afford to miss out on the season. But that brings me to the more fundamental point, which is in order to establish a breach of contract, one of the key elements that has to be established is that the plaintiff fully performed on the contract. And the plaintiff couldn't perform. The plaintiff could not, with a licensed agent, sell our property. So he couldn't market the property. He couldn't solicit offers. He couldn't obtain offers. He couldn't talk to other brokers. It would be the... Ken, you talked... The comment was made about hair stylists and nails. It's like a lawyer. If you go to see a lawyer, you assume that lawyer's licensed. Just because I sit behind a desk doesn't mean I can go into court and argue. I've got to have a license to do that. And that's what it comes down to. Even though you may hire the firm, overall, you're hiring me as your lawyer, and I have to be licensed to do it. If the lawyer's not licensed and everything the lawyer's done is... No. They're not. No. I think that Judge Taylor accurately and appropriately ruled on the motion to dismiss and accurately and appropriately ruled on the motion for reconsideration. All the arguments that were raised for reconsideration were new arguments. None of them were contained in the original motion. And even if they hadn't been, as he indicated, they're not persuasive on the issue of Mr. Coleman was not licensed and could not, therefore, perform the services required of a licensed real estate broker. And for those reasons, I think that this Court should affirm Judge Taylor. Thank you, Mr. Brimley. Thank you, Your Honor. We've got some brief rebuttal. Thank you, Your Honor. I'll be brief. So, quickly, just to address the procedural issue, all we're challenging here is the circuit court's interpretation of the designated agency provision in the contract. According to the circuit court, this means that if designated agent cannot perform, therefore, broker can't perform. And all the arguments we've made here simply explain why that's not true with regard to well-established contractual interpretation policy and the alleged that the circuit court fails to apply those properly. And that's been the same argument throughout this appeal. With regard to the elements of contract law, one of them being the plaintiff's performance, yes, that is true. But in special cases such as when the defendant anticipatorily breaches or repudiates the contract and says, I no longer want to work for you anymore, there is no obligation to then continue performing. The performance was not allowed to be performed once the defendant hired a different broker and said, we don't want you sowing the properties anymore. The next point is, again, the defendant's counsel makes the same conflation of marketing activities and agency duties and lumping them all under this bill of brokerage services. And that is the same argument we believe that the circuit court made. They are separate and distinct, and only agency-related duties that are set forth in the minimum services are those that the designated agent is required to make, to perform. And finally, I wanted to address Your Honor's point before about the public policy of oversight. I agree that it is an important part of the policy, but I also would point to the procedural posture of where this case is, that it was dismissed on a motion to dismiss 2-619. We don't know the facts of this case. We don't know why Mr. McDonald did not know that his licensee who had been licensed before all of a sudden had to resign. All of a sudden has to spend a license. As such, I will not be able to use those justifications as a reason for why public policy should weigh one way or the other in this particular case under this record. Again, that's basically all. Thank you. And you're requesting that the court reverse the decision of the trial court. We are, yes. Reverse the decision of the trial court to dismiss plaintiff's contract claim with prejudice and amend the proceedings. Okay. Thank you very much. Thank you. I would like to thank the attorneys for their arguments and for their briefs. This matter is going to be taken under advisement, and this court stands in recess.